IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| GARNET M. GOLD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11-3019-CV-S-DGK-SSA |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AFFIRMING COMMISSIONER'S DECISION**

Plaintiff Garnet M. Gold seeks judicial review of the Commissioner's denial of her application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42. U.S.C. § 401, *et seq.*, and her application for supplemental security income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.* Plaintiff has exhausted all administrative remedies, and judicial review is now appropriate under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

Gold alleges she became disabled as of April 7, 2007. Plaintiff's applications were initially denied. On November 20, 2009, following a hearing, an administrative law judge (ALJ) issued a decision unfavorable to the Plaintiff. After independent review of the record, carefully considering the arguments set forth by the parties, the Court finds the Commissioner's decision denying disability and SSI benefits is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

**Procedural and Factual Background**

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

## Standard of Review

A federal court's review of the Commissioner of Social Security's decision to deny disability benefits is limited to determining whether the Commissioner's findings are consistent with the Social Security Act, the relevant case law, and the regulations, and whether they are supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Substantial evidence is less than a preponderance, but it is "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id.* In making this determination, the court considers evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Id.* If substantial evidence in the record supports the Commissioner's decision, the court may not reverse because substantial evidence in the records supports a contrary result or because the court may have decided the case differently. *Id.*

## Discussion

To establish entitlement to benefits, Plaintiff must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of no less than 12 months. 42 U.S.C. §§ 423(d) and 1382(a)(3)(A). To determine a claimant's eligibility for SSI, the Commissioner employs a five-step evaluation process.[1] *See* 20 C.F.R. §§ 404.1520(a) and 416.920(a).

---

[1] There is a five-step process for determining eligibility. If the fact-finder determines at any step of the evaluation process that the claimant is or is not disabled, the inquiry does not continue. The applicant bears the burden of showing he is disabled from steps one through four of the process. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). At step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *Id.* The steps proceed as follows: First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity. If so, the applicant is not disabled; if not, the inquiry continues. At step two, the Commissioner determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments that has lasted or is expected to last for a continuous 12-month period. If not, the applicant is not disabled; if so, the inquiry continues. At step three, the Commissioner considers whether the impairment or combination of impairments meets the criteria of any impairment listed in Appendix 1 of 20 C.F.R. § 404.1520. If so, the applicant is considered disabled; if not, the inquiry continues. At step four, the

In the instant case, the administrative law judge ("ALJ") found that despite Plaintiff's severe impairments, including obesity, osteoarthritis of the knees, and back pain, Plaintiff was not disabled. Plaintiff argues the ALJ: (1) failed to properly evaluate Plaintiff's credibility; 2) improperly determined that Plaintiff's migraine headaches were non-severe; 3) improperly assessed Plaintiff's residual functional capacity ("RFC"), failing to consider the impact of Plaintiff's obesity in its determination; and 4) failed to properly weigh the opinions of medical professionals.

**A. The ALJ properly evaluated Plaintiff's credibility.**

Plaintiff argues that the ALJ improperly discounted her credibility, failing to explicitly discuss the *Polaski* factors as well as inconsistencies in medical evidence. The Court finds this argument without merit.

The ALJ articulated numerous inconsistencies in evaluating Plaintiff's credibility and subjective allegations of pain. When assessing a claimant's credibility, "the ALJ must look to the claimant's daily activities; the duration, frequency, and intensity of pain; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions." *Finch v. Astrue,* 547 F.3d 933, 935 (8th Cir. 2008) (citing *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir.1984)). Credibility is generally for the ALJ to determine, and the courts will defer to an ALJ's explicit credibility determination when it is supported by "a good reason." *Finch,* 547 F.3d at 935. In determining that Plaintiff's allegations were not entirely credible, the ALJ relied on the lack of objective medical evidence supporting Plaintiff's position and inconsistencies between Plaintiff's allegations and the record as a whole.

---

Commissioner considers if the applicant's residual functional capacity allows the applicant to perform past relevant work. If so, the applicant is not disabled; if not, the inquiry continues. At step five, the Commissioner considers whether, in light of the applicant's residual functional capacity, age, education and work experience, the applicant can perform any other kind of work. 20 C.F.R. § 404.1520(a)(4)(i)-(v) (2009); *King,* 564 F.3d at 979 n.2.

First, the ALJ discounted Plaintiff's credibility based on inconsistencies between her subjective allegations of pain and the objective medical evidence. R. at 13-17. For example, at her administrative hearing, Plaintiff reported that she had only a limited ability to sit, stand, walk, squat, or kneel. However, the medical records failed to support these allegations. In March 2005, an MRI of Plaintiff's lumbar spine yielded no evidence of significant spinal stenosis or disc herniation; an MRI of her left knee was normal except for early osteoarthiric, cartilage loss, and degenerative changes. R. at 14, 14, 185. At that time, orthopedic specialist Dr. Phipps recommended no treatment, and merely urged Plaintiff to lose weight. By August of 2005, Plaintiff's knee was normal, and Dr. Phipps provided her with a work-release without restriction. She has not seen any other orthopedic specialist since that time. In addition, at Plaintiff's consultative examination in September 2009, she was able to walk without any assistive device and had full range of motion in her knee, hip, ankle joints, and lumbar and cervical spine. R. at 15, 255.

The ALJ also found no record of manifestations of severe pain such as weight loss from loss of appetite due to incessant pain, muscular atrophy, muscular spasms, the use of assistive devices, or prolonged bed rest. In addition, Plaintiff was never referred to a pain management clinic and was not prescribed pain modalities such as a back brace or assistive walking device.

Next, the ALJ considered Plaintiff's noncompliance with medical recommendations. During one examination, Plaintiff was advised that losing weight would be the primary way to alleviate pain in her knee. In addition, she was referred to a weight-loss program. R. at 15, 191. However, Plaintiff did not use the referral, and in fact reported that she gained 100 pounds since the recommendation was made. R. at 190-91. A failure to follow a physician's recommended course of treatment weighs against a Plaintiff's credibility. *Guilliams v. Barnhart*, 393 F.3d 798,

802 (8th Cir. 2005). Plaintiff's failure to request additional medication for her migraines also weighs against her assertions that her pain was debilitating.

Third, the ALJ properly considered Plaintiff's inconsistent work history in discounting her credibility, noting that her erratic work history and history of frequently changing occupations calls into question whether she left work solely because of her impairments. R. at 16. Finally, the ALJ noted that Plaintiff's demeanor at her administrative hearing was inconsistent with the extreme limitations she alleged. R. at 16, 30-43. As both work history and demeanor at hearing can be considered by the ALJ in making credibility determinations, the Court finds that the ALJ properly evaluated Plaintiff's credibility.

**B. Substantial evidence on the record supports the ALJ's finding that Gold's migraine headaches were non-severe.**

Gold also alleges that the ALJ improperly discounted significant evidence demonstrating that her migraine headaches were severe impairments. R. at 8. Plaintiff argues that the record contains numerous references to frequent migraine headaches, occurring three to four times a week. Plaintiff also points to evidence showing that the medication offered to her caused serious side effects such that she could not take the medication to relieve her pain. In particular, Plaintiff finds fault with the ALJ's determination that Plaintiff could not be in significant pain because she did not request additional medication after the original medication prescribed to her made her sick. Plaintiff maintains that there is no medical basis for this finding.

The Court finds that substantial evidence supports the ALJ's finding that Gold's migraine headaches were non-severe. In order to meet the threshold severity requirement at step two, a claimant must show (1) she has an impairment or combination of impairments which (2)

significantly limits her physical or mental ability to perform basic work activities[2] without regard to age, education, or work experience. 20 C.F.R. §§ 404.1520(c), 404.1521(a). As the 8th Circuit has observed, "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard, and we have upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing." *Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007) (internal citation omitted).

Plaintiff maintains that her migraines were debilitating and that she was unable to take medication because of its adverse side effects. Medical evidence, however, does not support these contentions; rather, the medical evidence supports the ALJ's finding that Plaintiff's migraine headaches were not severe. In November 2006, Dr. Schrunk prescribed Topamax for Plaintiff's migraines. There is no record that she complained of side effects from this medication. In fact, in December 2006 and April 2007 she requested refills. When Dr. Williams began treating Plaintiff in April 2007, she reported a history of migraines; however, Dr. Williams never prescribed medication or treated Plaintiff for this condition. This evidence is inconsistent with Plaintiff's assertion that her pain was debilitating and uncontrolled with medication.

If an impairment can be controlled with medication, it is not considered disabling. *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009). As the ALJ noted, if her pain was severe, she would have requested additional medication or sought alternative treatment. In addition, Plaintiff never sought emergency room treatment or consultation at a headache clinic or with a neurologist. *Davis v. Apfel*, 239 F.3d 962, 966-67 (8th Cir. 2001) (noting that the ALJ can take into account efforts to seek medical treatment to alleviate alleged pain in determining whether an

---

[2] Basic work activities include physical functions such as walking, sitting, and lifting; mental functions such as understanding, performing, and remembering simple instructions; using judgment; and dealing with changes in a routine work situation. 20 C.F.R. § 404.1521(b).

impairment is severe). Accordingly, the Court finds the ALJ's determination is supported by substantial evidence on the record.

## C. The ALJ properly assessed Plaintiff's RFC, adequately evaluating the impact of Plaintiff's obesity on her functional limitations.

Incorporating all impairments and restrictions that he found credible, the ALJ determined that Plaintiff has the RFC to perform a full range of sedentary work. R. at 13. Plaintiff argues that the determination of RFC is a medical question, and that the ALJ's decision should have included the restriction that Plaintiff must alternate between sitting, standing, and walking on a frequent basis. Plaintiff also argues that the ALJ failed to consider her "profound obesity" in determining her RFC. Plaintiff asserts that the ALJ must take into account an individual's obesity and the combination of the obesity with other impairments in determining disability.

The Court finds these arguments meritless. First, the ALJ fully considered the impact of Plaintiff's obesity on her functional limitations. The ALJ found Plaintiff's obesity to be a severe impairment. However, after fully considering the medical evidence and Plaintiff's testimony regarding obesity-related health effects and physical limitations, the ALJ properly determined that Plaintiff's obesity did not create significant physical limitations.

In addition, the ALJ's determination of RFC is based on medical evidence and all other credible evidence. *Pearsall v. Massanari*, 274 F.3d 1211, 1217-18 (8th Cir. 2001). The ALJ's decision not to incorporate Plaintiff's requested restrictions is based on an evaluation of the evidence as whole. Plaintiff's assertion that she must alternative between sitting and standing on a frequent basis is based on a checklist provided by Dr. Williams. However, the ALJ properly discounted Dr. Williams's finding because it was based heavily on subjective reports of symptoms and little objective medical evidence. R. at 16-17.

Additionally, the ALJ did not discount Plaintiff's allegations of disability entirely or summarily. In fact, the ALJ accounted for Plaintiff's significant limitations by providing Plaintiff with a sedentary work restriction. R. at 17. Overall, the Court finds that the ALJ's RFC designation is based upon careful consideration of the record as a whole and accounts for Plaintiff's physical limitations that are consistent with that record. *See Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010).

**D. The ALJ properly evaluated the medical opinions.**

Plaintiff argues that the ALJ improperly rejected the medical findings and conclusions of her treating physician, Dr. Davis, who reported that Plaintiff would need to alternate between standing and sitting every thirty minutes. R. at 234. This argument, however, does not take into account the full record. On July 2, 2009, Dr. Davis did note that Plaintiff should alternate between standing and sitting every thirty minutes. *Id*. However, in the same evaluation Dr. Davis also indicated that Plaintiff could perform "light work," defined by the regulations as lifting twenty points occasionally, lifting ten pounds frequently, and a "good deal" of walking and standing. *Id*. Dr. Williams then went on to complete another portion of the form that stated it should only be completed if the physician determined the Plaintiff could *not* engage in light work. Dr. Williams also left several parts of the form blank, omitting sections requesting information regarding the date of alleged onset and prognosis.

Under the Social Security Administration regulations, the opinions of treating physicians are entitled to substantial weight. 20 C.F.R. §§ 404.1527(d) and 416.927(d). However, despite this deference, the opinion "does not automatically control or obviate the need to evaluate the record as a whole." *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004). In fact, an ALJ may discount or disregard the opinion of a treating physician where other medical assessments are

8

more thoroughly supported or where a treating physician renders inconsistent opinions. *Wildman*, 596 at 964.

The ALJ's determination that Dr. Williams's opinion regarding Plaintiff's limitations is entitled to little weight is supported by substantial evidence. First, the opinion was not based upon clinical findings. Plaintiff most frequently visited Dr. Williams for minor health issues such as ear and sinus pain. In addition, Dr. Williams's treatment notes revealed no complaints of knee pain, back pain, or physical limitations. The records also show that Dr. Williams never actually performed a full examination of Plaintiff. R. at 15-16, 211-14. Second, Dr. Williams's evaluation was incomplete. Dr. Williams did not complete the portion of the evaluation form requesting information on diagnoses, prescribed treatment, prognoses, signs and symptoms, or laboratory findings. R. at 235-38.

Dr. Williams's checklist was also internally inconsistent and unsupported by the record as a whole. For example, although Dr. Williams indicated that Plaintiff could perform the full range of light work, she later opined that Plaintiff could perform something less than light work and only with limitations. R. at 233-38. Dr. Williams's opinion was also inconsistent with Dr. Phipps, who provided Plaintiff a work release "without restriction." R. at 192, 201-214. Dr. Zeimet's report also contradicted Dr. Williams. At Dr. Zeimet's consultative evaluation, Dr. Zeimet found Plaintiff had the full range of motion in her arms, legs, shoulder, elbow, knee, wrist, hip, and cervical and lumbar spine. Dr. Zeimet then concluded that Plaintiff could perform light-duty work during a normal eight hour day.

Overall, Dr. Williams's opinion was properly discredited. This opinion was contradicted by the opinions of other medical professionals, was internally inconsistent, cited no medical

support, and was based primarily on conclusory opinions. Accordingly, the ALJ properly accorded little weight to the opinion.

## Conclusion

After careful examination of the record as a whole, the Court finds the Commissioner's determination is supported by substantial evidence on the record. Accordingly, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:  September 27, 2011                         /s/ Greg Kays
                                                               GREG KAYS, JUDGE
                                                               UNITED STATES DISTRICT COURT